UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARK ANTHONY SPELL, ET AL** | CIVIL ACTION |
| **VERSUS** | |
| **JOHN BEL EDWARDS, ET AL** | NO: 20-00282-BAJ-EWD |

## RULING ORDER

Before the Court is Plaintiffs' **Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2)**. The Motion is opposed. *See* (Doc. 21, 22, 27 & 37). For the reasons stated herein, Plaintiffs' Motion is **DENIED**.

### I.   BACKGROUND

The President of the United States declared a nationwide state of emergency in response to the COVID-19 pandemic.[1] Like many other states, the Governor of the State of Louisiana, Defendant John Bel Edwards, similarly declared a statewide public health emergency. (Doc. 1–3, at p. 15). During this time of crisis, the Governor's office has systematically issued proclamations outlining the State's evolving response to the pandemic.[2] As both the infection rate and the death toll grew in Louisiana, and under guidance issued to all states by the Centers for Disease Control and

---

[1] See, Proc. No. 9994, 85 Fed. Reg. 15,337, 2020 WL 1272563 (Mar. 13, 2020).

[2] Under the Louisiana Homeland Security and Emergency Assistance and Disaster Act, the Governor may issue executive orders, proclamations, and regulations that carry the force and effect of law. *See* La. Stat. Ann. § 29:724.

1

Prevention, the Governor's proclamations, *inter alia*, imposed tighter restrictions upon the ability of persons to gather and congregate. (Doc. 21, at p. 5). At the time the Complaint and Motion were filed, the most recent Proclamation, No. 52 JBE 2020, included a provision restricting the gathering of more than ten people in a single space at a single time. (Doc. 1–2, at p. 2). The Proclamation was issued to promote efforts to limit the rapid spread of COVID-19.

Plaintiff Mark Anthony Spell is the pastor of Plaintiff Life Tabernacle Church, located in the Baton Rouge area. (Doc. 1, at ¶¶ 3–4). Plaintiff Spell alleges that the restrictions contained in the Governor's proclamation violate his constitutional rights.[3] Specifically, Plaintiffs' nine claims allege that the Governor's orders violate: the Free Exercise, Establishment, Freedom of Assembly, and Free Speech clauses of the First Amendment of the United States Constitution; the Equal Protection clause under the Fourteenth Amendment of the United States Constitution; the Free Exercise, Freedom of Assembly and Freedom of Speech clauses of the Louisiana Constitution; and the provisions of the Louisiana Homeland Security and Emergency Assistance Act by using emergency powers to abridge constitutional rights. *Id.* at ¶¶ 44, 66, 70, 75, 82, 86, 92, 98, 111. Plaintiffs seek an injunction preventing these orders from being enforced against them and seek compensation for the alleged

---

[3] Plaintiffs' Motion also challenged an order issued by the Nineteenth Judicial District Court placing Plaintiff Spell under house arrest following his arrest for aggravated assault, which allegedly prevented him from preaching or assembling his congregation. However, Plaintiffs subsequently dismissed Judge Fred T. Crifasi, who issued the bond order requiring house arrest, as an original Defendant in the case, as well as Mayor Sharon Weston Broome and Mayor David Barrow, who were among the named Defendants. *See* (Docs. 23, 24). In doing so, Plaintiffs have abandoned any challenges to the state court's order that was initially challenged in the Motion. Counsel for Plaintiffs expressly dismissed all such challenges to the state court's ruling in Plaintiff Spell's criminal case during the hearing held on this Motion on May 14, 2020.

deprivation of their constitutional rights. (Doc. 1 at ¶ 2). Plaintiffs also ask the Court to prohibit the enforcement of the Governor's Executive Order by Defendants Central City Police Chief Roger Corcoran and East Baton Rouge Parish Sheriff Sid Gautreaux.

At the core of their argument, Plaintiffs submit that their congregation "is a large assembly of more than 2,000 individuals" whose religious beliefs require them to assemble for church in person. (Doc. 1 at ¶ 17). Additionally, Plaintiff Spell avers that he is imbued with a "duty to lay hands on the sick and pray for them so that they may become well," which, along with holy communion and the love offering, would lose meaning absent a public gathering. *Id.* at ¶¶ 20–21. Plaintiffs allege that, in an effort to enforce the orders, Defendant Gautreaux personally threatened Plaintiff Spell with arrest if he continued holding church assemblies. *Id.* at ¶ 24. Defendant Gautreaux denies that he has ever threatened Plaintiff Spell with arrest. (Doc. 27–1 at ¶ 8). When Plaintiff Spell continued to hold services, six misdemeanor summonses were issued to him by Defendant Corcoran (Doc. 1 at ¶ 28), yet he was not arrested or placed in police custody for conducting religious services.

On May 12, 2020, Defendants duly filed oppositions to the Motion. *See* (Docs. 21, 22, 27). Thereafter, Plaintiffs voluntarily dismissed three Defendants, as discussed *supra*.[4] Remaining Defendants filed motions to dismiss. *See* (Docs. 25, 26). On May 14, 2020, the Court held a hearing on the merits of the instant Motion.

---

[4] The three original Defendants who were voluntarily dismissed by Plaintiffs include Baton Rouge Mayor Sharon Weston Broome, Central City Mayor David Barrow, and Judge Fred T. Crifasi.

3

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 65(b), to obtain injunctive relief by way of a Temporary Restraining Order, Plaintiffs must establish: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) that the injunction will not disserve the public interest. See *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008). These elements also apply to Plaintiffs' request for a preliminary injunction, which is "an extraordinary and drastic remedy" that is "never to be awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal citations and quotations omitted).  See also *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).

At all times, the burden of persuasion remains with Plaintiffs as to each of the four elements.  If Plaintiffs fail to meet the burden regarding any of the required elements, the Court need not address the other elements necessary for granting a preliminary injunction. *See Roho, Inc. v. Marquis*, 902 F.2d 356, 261 (5th Cir. 1990) (declining to address the remaining elements necessary to obtain a preliminary injunction after finding that the plaintiff failed to show a substantial likelihood of success on the merits).

4

### III. DISCUSSION

The first factor Plaintiffs must meet for entitlement to injunctive relief is the likelihood of success on the merits. Plaintiffs allege that the Governor's orders have been "discriminatorily and disparately applied" against them while allowing "local and similarly situated non-religious businesses" to remain open, accommodating "gatherings, crowds of more than ten (10) people…without the enforcement of any 'social distancing,' or other measures supposedly required by the Emergency Orders." (Doc. 2, at p. 3). This prohibition as applied to churches, Plaintiffs argue, is therefore an arbitrary and discriminatory distinction. (Doc. 1, at ¶ 57). Additionally, Plaintiffs argue that the requirements of the Governor's orders prohibit religious practices such as baptisms and the laying on of hands, which violates the Establishment Clause by dictating what Plaintiffs can and cannot include in their service. (Doc. 2–2 at p. 7).

Plaintiffs seek recognition of their constitutional rights in a vacuum, curiously paying no heed to the pandemic that has spread across the entire nation in a matter of mere weeks. The Complaint and instant Motion heavily reference the importance of individual freedoms, which neither the Court nor the Defendants dispute. However, Plaintiffs ignore controlling law under these perilous circumstances.

In determining "the framework governing emergency public health measures," the United States Court of Appeals for the Fifth Circuit has looked to the Supreme Court's decision in *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905). *See In re Abbott*, 954 F.3d 772, 778 (5th Cir. 2020). Indeed, the Supreme Court has

5

long recognized that "liberty secured by the Constitution" is not absolute in the face of an epidemic, but rather that a community "has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Jacobson* 11 U.S. at 29.

The Supreme Court has also recognized that "[T]he right to practice religion freely does not include liberty to expose the community…to communicable disease or the latter to ill health or death." *Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944). According to the Fifth Circuit, *Jacobson* stands for the following principle: "'[U]nder the pressure of great dangers,' constitutional rights may be reasonably restricted 'as the safety of the general public may demand.'" *Abbott*, 954 F.3d at 778 (quoting *Jacobson*, 11 U.S. at 29). In fact, the "settled rule allows the state to," for example, "restrict . . . one's right to peace[fully] assemble, *to publicly worship*, to travel, and even to leave one's home." *In re Abbott*, 954 F.3d at 778 (emphasis added). Where a law that burdens religious freedom is neutral and generally applicable to all citizens and institutions, it is not subject to a heightened scrutiny above the standard rational-basis review. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

Plaintiffs argue that the orders are discriminatory and disparately applied because they permit other "similarly situated non-religious businesses" such as "big box retailers, groceries and hardware stores" to remain open to crowds larger than 10 people. (Doc. 2, at p. 3). Indeed, a law "lacks neutrality where it refers to a religious

6

practice without a secular meaning discernable from the language or context." *Lukumi*, 508 U.S. at 533.

At the hearing on the instant Motion, Defendants argued that the transient, in-and-out nature of consumer interaction with businesses, like those identified by the Plaintiff, are markedly different from the extended, more densely packed environments of churches, or from nonessential businesses that *have* been fully closed, including aquariums, museums, arcades, theaters, bars, gymnasiums, and more. (Doc. 1–2, at p. 2). In fact, multiple versions of the proclamations thus far, including the version challenged by Plaintiffs, have even classified "travel to and from places of worship" as an essential activity, thereby implying that it is permissible under the order to visit churches, and by extension, that churches may continue to conduct worship services. (*Id.*, at 2, 20; Doc. 1–3 at p. 8). The text of the Governor's orders therefore supports Defendants' contentions that the orders neither target religion nor lack a neutral, secular meaning—specifically, the promotion and protection of public health.

As clarified by a recent ruling by the Fifth Circuit, constitutional rights, including the right to peaceably assemble and publicly worship, may be reasonably restricted by the state "as the safety of the general public may demand" under the pressure of great dangers like COVID-19. *In re Abbott*, 954 F.3d 772, 778 (5th Cir. 2020). The court in *Abbott* described the "bottom line" for such restrictions:

> "[W]hen faced with a society-threatening epidemic, a state may implement emergency measures that curtail constitutional rights so long as the measures have at least some 'real or substantial relation' to the public health crisis and are not 'beyond all question, a plain,

7

palpable invasion of rights secured by the fundamental law.'"

*Id.* at 784, citing *Jacobson*, 197 U.S. at 31. The court specifically instructed that "*all* constitutional rights may be reasonably restricted to combat a public health emergency." *Id.* at 786 (emphasis in original).

The Court finds that there is a substantial relationship between the occupancy limitations in the Governor's orders and the current severe public health crisis. Such restrictions are directly intended to limit the contact-based spread of COVID-19.[5] Additionally, like the law at issue in *Jacobson*, Proclamation No. 52 JBE 2020 is not a complete ban on Plaintiffs' rights as alleged by Plaintiffs. Under the terms of the order, Plaintiffs have been free to hold outdoor services with as many congregants as they would like and nothing in the orders proscribes, inhibits or regulates the content of their religious speech. Plaintiffs have always been free to fully exercise their rights to assembly, although for smaller numbers of congregants. *Id.* at 789.

Plaintiffs' Establishment Clause claim is equally unlikely to succeed, as imposing harms on third parties by exempting religious exercise from requirements of the law may impermissibly favor the benefited religion over non-beneficiaries. *Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703, 709–10 (1985). The Supreme Court held in *Estate of Thornton* that a Connecticut statute violated the Establishment Clause by providing Sabbath observers with an absolute right not to work on their

---

[5] *See* The President's Coronavirus Guidelines for America, 30 Days to Slow the Spread (March 31, 2020), https://www.whitehouse.gov/briefings-statements/coronavirus-guidelines-america (last visited May 15, 2020) (recommending, among other hygienic and distancing measures, that gatherings in groups of more than 10 people be avoided in order to slow the spread of COVID-19).

8

chosen sabbath. *Id.* at 703. A statute (or order) must not have a primary effect of advancing or inhibiting religion. *Id.* Shielding Plaintiffs' congregation of 2,000 from the Governor's orders based solely upon their preference to assemble larger groups for their services may amount to a carveout that is not available to other non-religious businesses, in violation of the Establishment Clause.

Next, Plaintiffs fail to adequately demonstrate that the balance of equities supports their position. As Plaintiffs would have it, the equities tip decidedly in their favor because "even minimal infringements upon [Plaintiffs'] First Amendment values constitutes irreparable injury" and that the State of Louisiana is "in no way harmed" by issuance of an injunction of the Governor's orders. (Doc. 2–2 at p. 14). Plaintiffs proceed to argue that "there can be no comparison between the irreparable and unconscionable loss of First Amendment freedoms suffered by Plaintiffs absent injunctive relief and the ***non-existent interest*** the State has in enforcing unconstitutional Governor's Agency Orders." *Id.* (emphasis added).

Plaintiffs make no mention of Proclamation No. 25 JBE 2020, which provides in § 1 that "a statewide public health emergency is declared…as a result of the imminent threat posed to Louisiana citizens by COVID-19" (Doc. 1 – 3, at p. 15). Yet, the Fifth Circuit has acknowledged that "a community," or in this case, the State of Louisiana, "has the right to protect itself against an epidemic of disease which threatens the safety of its members." *See In re Abbott*, 954 F.3d at 783. Indeed, "*Jacobson* instructs that *all* constitutional rights may be reasonably restricted to combat a public health emergency," and including the right of the public to freely

9

exercise religion in the manner of its choosing in light of COVID-19. *In re Abbott*, 954 F.3d at 786 (emphasis in original). Plaintiff's conclusory statement fails to demonstrate that their rights, which are not absolute, outweigh the lives and health of Louisiana's population.

With respect to the final factor, Plaintiffs simply argue that upholding constitutional rights generally serves the public interest, and therefore protection *ipso facto* is in the interest of the public. (Doc. 2–2, at p. 14–15). Again, Plaintiffs are silent on the counterbalancing considerations of public health that the Court is obligated to consider when evaluating the public interest. "[A] court must at the very least weigh the potential injury to the public health when it considers enjoining state officers from enforcing emergency public health laws." *Abbott*, 954 at 791–92. Once again, Plaintiffs have failed to demonstrate that the public interest, the health and lives of the people of Louisiana, is best served by exempting them from the neutral, orders of the Governor.

To be sure, the Court recognizes that the Governor's order in this case, like in all cases, is "presumed to be constitutional, and the burden of showing [it] to be unconstitutional is on the challenging party, not on the party defending the [Governor's order]." *See New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 17 (1988). Therefore, and to that end, the Court *must* uphold a Governor's order implementing reasonable restrictions on the public's constitutional rights in the midst of a national pandemic, especially when, as here, the Plaintiffs fail to show that the Governor's order bears no "real or substantial relation to the public health

10

crisis." *See In re Abbott*, 954 F.3d at 786 (internal quotations omitted) Plaintiffs' also fail to demonstrate that the Governor's order is "beyond all question, a plain, palpable invasion of the [Plainiff's constitutional] right[s]." *See In re Abbott*, 954 F.3d at 786 (internal quotations omitted). Plaintiffs have not (and cannot) make such a showing. A plain reading of the Governor's order demonstrates that it is neutral with respect to religion; that is, the Governor's order restricts religious and non-religious gatherings to the *exact* same extent and degree. See, *Employment Division v. Smith*, 494 U.S. 872, 883 (1990).

Additionally, as noted during the hearing on this Motion, the Court finds that Plaintiffs fail to establish a likelihood of success on the merits as to any claims asserted against Defendants Chief Corcoran and Sheriff Gautreaux. Plaintiffs' allegations against Defendant Corcoran are simply that he issued six misdemeanor summonses to Plaintiff Spell for violation of the Governor's orders, which Plaintiffs deficiently argue are not law. (Doc. 1, ¶ 24; Doc. 2–2 at p. 5). Plaintiffs' claim that Plaintiff Spell's rights were violated through "threat of or actual arrest" by Defendant Gautreaux for the exercise of his religious freedoms also lacks merit. (Doc. 1, at ¶ 24). No evidence has been offered by Plaintiff to show that, despite Plaintiff Spell's repeated defiance of the Order (when he conducted numerous worship services after the issuance of the order yet was not arrested), that a real and imminent threat was presented by Defendant Gautreaux in arresting him. Indeed, Plaintiffs' counsel conceded at the hearing that Plaintiff Spell's only actual arrest was the result of the assault charges indirectly related to this proceeding.

Lastly, the Court notes that Defendants have argued extensively that Plaintiffs' claims are rendered moot by the Governor's latest Order, Proclamation No. 58 JBE 2020, which is effective as of today, May 15, 2020. Under § 2(G)(4)(a)-(b) of the latest Proclamation, churches and other faith-based organizations are permitted to hold indoor services with up to 25% capacity of total occupancy as determined by the State Fire Marshal. In addition, Plaintiffs remain free to conduct outdoor services, to which they have always been entitled, for as many congregants as they wish to host. Because the 10-person indoor limit that forms the basis of Plaintiffs' Complaint and Motion is no longer in effect, Defendants argue that the Motion, and even the entire case, is moot. (Doc. 25, at p. 1).

The Court finds merit in the argument, given that the complained of restriction is no longer imposed on the Plaintiffs. Defendants have filed separate motions to dismiss in which they fully articulate these arguments. (Docs. 25, 26). Plaintiffs nonetheless insist that they are entitled to monetary damages and attorneys' fees for the alleged violation of their rights. The Court will take up such matters at a later stage in these proceedings.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiffs' **Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2)** against all Defendants is **DENIED**.

Baton Rouge, Louisiana, this 15th day of May, 2020

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**