# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 20-30358

MARK ANTHONY SPELL; LIFE TABERNACLE CHURCH,

    Plaintiffs - Appellees

v.

JOHN BEL EDWARDS, in his individual capacity and his official capacity as Governor of the State of Louisiana; ROGER CORCORAN, in his individual capacity and official capacity as Chief of Police of Central City, Louisiana; SID GAUTREAUX, individually and in his official capacity as Sheriff of East Baton Rouge Parish, Louisiana,

    Defendants - Appellants

Appeal from the United States District Court
for the Middle District of Louisiana

Before SMITH, COSTA, and HO, Circuit Judges.

GREGG COSTA, Circuit Judge:

    COVID-19 has brought another appeal to our court. A Louisiana church and its pastor ask us enjoin stay-at-home orders restricting in-person church services to ten congregants. But there is nothing for us to enjoin. The challenged orders expired more than a month ago. That means this appeal and the related request for an injunction under Federal Rule of Appellate Procedure 8(a)(1)(C) are moot.

Case: 20-30358    Document: 00515456754    Page: 2    Date Filed: 06/18/2020
Case 3:20-cv-00282-BAJ-EWD   Document 76   06/18/20   Page 2 of 13

No 20-30358

I.

A.

In less than six months, COVID-19 has killed more than 115,000 Americans.[1] Parts of Louisiana were early hotspots for the virus.

On March 11, just two days after the first confirmed case in the Pelican State, Governor John Bel Edwards declared the COVID-19 pandemic a public health emergency. La. Exec. Dep't, Proclamation No. 25 JBE 2020, § 1.[2] Less than two weeks later, the Governor issued a proclamation closing certain businesses and ordering "individuals within the state . . . to stay home unless performing an essential activity." La. Exec. Dep't, Proclamation No. 33 JBE 2020, § 3.[3] The order also "postponed or cancelled" "gatherings of 10 people or more." *Id.* § 2. Although some businesses were exempt from that restriction, churches and other religious meeting places were not. *Id.*

The Governor extended the stay-at-home order on April 2 because "the COVID-19 outbreak in Louisiana ha[d] expanded significantly." La. Exec. Dep't, Proclamation No. 41 JBE 2020.[4] He extended the order again on April 30. La. Exec. Dep't, Proclamation No. 52 JBE 2020.[5] The second extension was set to last from May 1 to May 15. *Id.* § 15.

The day before the second extension was set to expire, the Governor announced that Louisiana would follow the Trump Administration's three-

---

[1] *Coronavirus Disease 2019 (COVID-19): Cases in the U.S.*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited June 17, 2020).
[2] Available at https://gov.louisiana.gov/assets/Proclamations/2020/modified/25-JBE-2020-Public-Health-Emergency-COVID-19.pdf.
[3] Available at https://gov.louisiana.gov/assets/Proclamations/2020/JBE-33-2020.pdf.
[4] Available at https://gov.louisiana.gov/assets/Proclamations/2020/modified/41-JBE-2020-Public-Health-Emergency.pdf.
[5] Available at https://gov.louisiana.gov/assets/Proclamations/2020/modified/52-JBE-2020-State-of-Emergency-COVID-19-Extension-to-May-15.pdf.

Case: 20-30358 Document: 00515456754 Page: 3 Date Filed: 06/18/2020
Case 3:20-cv-00282-BAJ-EWD Document 76 06/18/20 Page 3 of 13

No 20-30358

phased reopening approach.[6] La. Exec. Dep't, Proclamation No. 58 JBE 2020.[7] So instead of renewing the stay-at-home order for a third time, the Governor issued a proclamation for Phase 1. It allowed churches to hold gatherings with up to 25 percent of their "total occupancy." *Id.* § 2(G)(4)(a). On June 5, the Governor transitioned the state to Phase 2. La. Exec. Dep't, Proclamation No. 74 JBE 2020.[8] The Phase 2 guidance—still in effect today—allows churches to operate at 50 percent capacity. *Id.* § 2(G)(4)(a).

B.

Pastor Mark Anthony Spell leads Life Tabernacle Church in Baton Rouge. The church has over 2,000 members. They "sincerely believe that the Bible commands them to hold . . . services in person."

When the Governor's first stay-at-home order went into effect, Life Tabernacle remained open. Pastor Spell was subsequently arrested for defying the order. And because he repeatedly held in-person services, police issued him six misdemeanor summons. Pastor Spell was also arrested for an alleged assault and, as a condition of bond, placed on house arrest. Nevertheless, he continued to preach to his congregation. On May 7, he and Tabernacle Life Church filed this lawsuit.

Attacking the stay-at-home orders' ten-person gathering limit, the plaintiffs asserted several federal and state constitutional claims. They asked for permanent injunctive relief and damages, but first sought a preliminary injunction to stop enforcement of the orders.

Working diligently to resolve the motion, the district court heard argument and issued an order denying the requested relief on May 15. *Spell*

---

[6] *Opening Up America Again*, The White House, https://www.whitehouse.gov/openingamerica/ (last visited on June 17, 2020).

[7] Available at https://gov.louisiana.gov/assets/Proclamations/2020/58-JBE-2020.pdf.

[8] Available at https://gov.louisiana.gov/assets/Proclamations/2020/74-JBE-2020-State-of-Emergency-COVID-19-Resilient-Louisiana-Phase-2.pdf.

Case: 20-30358   Document: 00515456754   Page: 4   Date Filed: 06/18/2020
Case 3:20-cv-00282-BAJ-EWD   Document 76   06/18/20   Page 4 of 13

No 20-30358

*v. Edwards*, -- F. Supp. 3d --, 2020 WL 2509078 (M.D. La. 2020). The court denied the motion on the merits, but it also noted the possibility of mootness given that the challenged orders were set to expire that day. *Id.* at *5–6.

The plaintiffs did not immediately appeal the denial of injunctive relief. Instead, two weeks after the court's ruling, they filed an amended complaint acknowledging that the Governor had lifted the ten-person gathering restriction. Not until three weeks after the district court's order did the plaintiffs notice this appeal. They also asked us to grant an injunction pending appeal. FED. R. APP. P. 8(a)(1)(C). They did not first ask the district court for that relief as the rule requires.

## II.

This recap of the case's history shows why the current appeal—challenging only the denial of the motion for a preliminary injunction—is moot. Mootness is one of the doctrines that ensures federal courts are only deciding live cases or controversies. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). A matter is moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (quotations omitted).

It makes sense, then, that a case challenging a statute, executive order, or local ordinance usually becomes moot if the challenged law has expired or been repealed. *See, e.g.*, *Veasey v. Abbott*, 888 F.3d 792, 799 (5th Cir. 2018) ("Ordinarily, a[n] [action] challenging a statute would become moot by the legislature's enactment of a superseding law."). Once the law is off the books, there is nothing injuring the plaintiff and, consequently, nothing for the court to do. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1526 (2020) (holding that a claim for injunctive relief against a law was moot when the law was amended to give "the precise relief that [the plaintiffs]

requested"); *Amawi v. Paxton*, 956 F.3d 816, 819, 821 (5th Cir. 2020) (dismissing an appeal as moot because a statutory amendment "provided the plaintiffs the very relief their lawsuit sought").

That said, "a defendant cannot automatically moot a case simply by ending its [allegedly] unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013); *see also Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 284–86 (5th Cir. 2012) (concluding that a city's repeal of an ordinance the night before oral argument did not moot the plaintiff's challenges to the ordinance). If that is all it took to moot a case, "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Nike*, 568 U.S. at 91. To show that such a change of heart is not mere litigation posturing, a defendant asserting mootness must demonstrate "that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 425 (5th Cir. 2020); *see also Yarls v. Bunton*, 905 F.3d 905, 910 (5th Cir. 2018) ("Essentially, the goal is to [decide] whether the defendant's actions are 'litigation posturing' or whether the controversy is actually extinguished.").

But a statute that expires by its own terms does not implicate those concerns. Why? Because its lapse was predetermined and thus not a response to litigation. So unlike a postsuit repeal that might not moot a case, a law's automatic expiration does. *Trump v. Hawaii*, 138 S. Ct. 377, 377 (2017) (dismissing as moot a challenge to an executive order's provisions that had "expired by [their] own terms"); *see also Burke v. Barnes*, 479 U.S. 361, 363–64 (1987) (holding "that any issues concerning whether [a bill] became a law were mooted when [it] expired by its own terms").

Case: 20-30358   Document: 00515456754   Page: 6   Date Filed: 06/18/2020
Case 3:20-cv-00282-BAJ-EWD   Document 76   06/18/20   Page 6 of 13

No 20-30358

Governor Edwards's stay-at-home orders expired by their own terms. The plaintiffs' request that we enjoin them is therefore moot. *Trump*, 138 S. Ct. at 377; *Burke*, 479 U.S. at 363–64.[9]

Plaintiffs contend that another way around mootness—the "capable of repetition, yet evading review" exception—keeps this appeal alive. This exception overcomes the general rule against deciding stale claims only if: (1) "the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration," and (2) "there [is] a reasonable expectation that the [plaintiffs] [will] be subject to the same action again." *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (instructing that this "exception applies only in exceptional situations" (quotation omitted)). The plaintiffs must prove these requirements. *Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir. 2010). Even if the first requirement (duration) is satisfied for the stay-at-home orders, the plaintiffs fail to establish that the Governor might reimpose another gathering restriction on places of worship. The trend in Louisiana has been to reopen the state, not to close it down. To be sure, no one knows what the future of COVID-19 holds. But it is speculative, at best, that the Governor might reimpose the ten-person restriction or a similar one. *Lopez v. City of Houston*, 617 F.3d 336, 340 (5th Cir. 2010) (requiring more than "merely a theoretical possibility" that the allegedly wrongful conduct would reoccur (quotation omitted)); *see also Cameron*, 2020 WL 2573463, at *2 (concluding that the exception did not apply to a mooted claim challenging expired COVID-19 restrictions in part because "it seem[ed] unlikely that [they] w[ould] be reissued").

---

[9] *See also Martinko v. Whitmer*, -- F. Supp. 3d --, 2020 WL 3036342, at *3 (E.D. Mich. June 5, 2020) (holding that a claim challenging superseded COVID-19 restrictions was moot); *Ministries v. Newsom*, -- F. Supp. 3d --, 2020 WL 2991467, at *3 (S.D. Cal. June 4, 2020) (same); *Cameron v. Beshear*, 2020 WL 2573463, at *2–3 (E.D. Ky. May 21, 2020) (same); *Krach v. Holcomb*, 2020 WL 2197855, at *2 (N.D. Ind. May 6, 2020) (same).

Case: 20-30358 Document: 00515456754 Page: 7 Date Filed: 06/18/2020
Case 3:20-cv-00282-BAJ-EWD Document 76 06/18/20 Page 7 of 13

No 20-30358

What is more, the plaintiffs fail to cite any authority applying the "capable of repetition" exception to support a Rule 8 injunction against an order that is no longer in effect. The exception usually applies to keep a case alive, largely out of a fear that the legal questions posed by cases prone to becoming moot will never be answered. *See* 13C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3533.8 (3d ed. 2020). That is not a concern here. While the expiration of the stay-at-home orders moots plaintiffs' request to enjoin them, their claim for damages remains. *See Opulent Life Church*, 697 F.3d at 286; *see also* EDWIN CHEMERINSKY, FEDERAL JURISDICTION § 2.5.2 (6th ed. 2012) ("[A] plaintiff seeking both injunctive relief and money damages can continue to pursue the case, even after the request for an equitable remedy is rendered moot."). We express no view on the merits of that claim, which has yet to reach final judgment.

\* \* \*

Because this appeal is moot, the plaintiffs' motion for an injunction is DENIED. For the same reasons, the appeal is DISMISSED. And because the appeal became moot before appellate review, the district court's order denying preliminary relief is VACATED. *Spell*, 2020 WL 2509078. The plaintiff's claim for damages remains in the district court.

Case: 20-30358   Document: 00515456754   Page: 8   Date Filed: 06/18/2020
Case 3:20-cv-00282-BAJ-EWD   Document 76   06/18/20   Page 8 of 13

No 20-30358

JAMES C. HO, Circuit Judge, concurring:

I agree that this appeal is moot due to recent changes to the Governor's order, and that the case will now return to the district court. I write separately to note how other recent events may affect this case going forward.

*  *  *

At the outset of the pandemic, public officials declared that the *only* way to prevent the spread of the virus was for everyone to stay home and away from each other. They ordered citizens to cease all public activities to the maximum possible extent—even the right to assemble to worship or to protest.

But circumstances have changed. In recent weeks, officials have not only tolerated protests—they have encouraged them as necessary and important expressions of outrage over abuses of government power.

For people of faith demoralized by coercive shutdown policies, that raises a question: If officials are now exempting protesters, how can they justify continuing to restrict worshippers? The answer is that they can't. Government does not have carte blanche, even in a pandemic, to pick and choose which First Amendment rights are "open" and which remain "closed."

## I.

Officials may take appropriate emergency public health measures to combat a pandemic. *See Jacobson v. Massachusetts*, 197 U.S. 11, 30–31 (1905). *See also Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944). But "[n]othing in *Jacobson* supports the view that an emergency displaces normal constitutional standards." *S. Bay United Pentecostal Church v. Newsom*, 959 F.3d 938, 942 (9th Cir. 2020) (Collins, J., dissenting) (emphasis omitted).[1]

---

[1] Judge Collins has criticized our court for reading *Jacobson* too broadly in favor of the government. *See S. Bay*, 959 F.3d at 943 n.2 (criticizing *In re Abbott*, 954 F.3d 772 (5th Cir. 2020)). I would simply observe that, whatever *Jacobson*'s scope, *Abbott* makes clear that

8

Case: 20-30358    Document: 00515456754    Page: 9    Date Filed: 06/18/2020
Case 3:20-cv-00282-BAJ-EWD    Document 76    06/18/20    Page 9 of 13

No 20-30358

The Governor invokes *Employment Division v. Smith*, 494 U.S. 872 (1990). But *Smith* upheld a "neutral law of general applicability" against challenge under the Free Exercise Clause. *Id.* at 879 (quotations omitted). *Smith* does *not* cover laws that grant exemptions to some, while denying them to people of faith. "Religious liberty deserves better than that—even under *Smith*." *Horvath v. City of Leander*, 946 F.3d 787, 795 (5th Cir. 2020) (Ho, J., concurring in the judgment in part and dissenting in part).[2]

Instead, laws that burden religion while exempting the non-religious must pass strict scrutiny. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993). The burden on religion "must be justified by a compelling governmental interest," and the law "must be narrowly tailored to advance that interest." *Id.* at 531–32. That is a heavy lift: Such laws "will survive strict scrutiny only in rare cases." *Id.* at 546.

I do not expect this to be one of those "rare cases." *Id.* Pastor Mark Anthony Spell and his parishioners seek to worship as their faith directs. They cannot do so, however, due to a series of orders by Governor John Bel Edwards that forbid citizens from assembling in public—including inside churches.

The Governor no doubt issued those orders out of sincere public health concerns. To survive First Amendment scrutiny, however, those concerns must

---

pandemic regulations must govern "evenhandedly"—precisely the problem here. *In re Abbott*, 954 F.3d at 792.

[2] *Smith* has been derided by "[c]ivil rights leaders and scholars . . . as 'the *Dred Scott* of First Amendment law,'" criticized by "[a]t least ten members of the Supreme Court," and "widely panned as contrary to the Free Exercise Clause and our Founders' belief in religion as a cornerstone of civil society." *Horvath*, 946 F.3d at 794–95 (Ho, J., concurring in the judgment in part and dissenting in part) (quoting other sources). *Smith* is troubling because it is of "little solace to the person of faith that a non-believer might be equally inconvenienced." *Id.* at 796. "For it is the person of faith whose faith is uniquely burdened—the non-believer, by definition, suffers no such crisis of conscience. This recalls Anatole France's mordant remark about 'the majestic quality of the law which prohibits the wealthy as well as the poor from sleeping under the bridges, from begging in the streets, and from stealing bread.'" *Id.* (quoting ANATOLE FRANCE, THE RED LILY 87 (1910)).

Case: 20-30358      Document: 00515456754      Page: 10      Date Filed: 06/18/2020
Case 3:20-cv-00282-BAJ-EWD   Document 76   06/18/20   Page 10 of 13

No 20-30358

be applied consistently, not selectively. And it is hard to see how that rule is met here if the record is developed to take account of the recent protests.

It is common knowledge, and easily proved, that protestors do not comply with social distancing requirements.[3] But instead of enforcing the Governor's orders, officials are encouraging the protests—out of an admirable, if belated, respect for First Amendment rights. The Governor himself commended citizens for "appropriately expressing their concerns and exercising their First Amendment Rights."[4] And he predicted that "we will continue to see peaceful, nonviolent demonstrations and protests where people properly exercise their First Amendment rights."[5]

If protests are exempt from social distancing requirements, then worship must be too. As the United States recently observed, "California's political leaders have expressed support for such peaceful protests and, from all appearances, have not required them to adhere to the now operative 100-person limit. . . . [I]t could raise First Amendment concerns if California were to hold other protests . . . to a different standard." Brief for the United States as Amicus Curiae at 24, *Givens v. Newsom*, No. 20-15949 (9th Cir. June 10, 2020). The same principle should apply to people of faith. *See, e.g.*, *Lukumi*, 508 U.S. at 537 ("[Where] individualized exemptions from a general requirement are available, the government may not refuse to extend that

---

[3] *See, e.g.*, *George Floyd protest in Baton Rouge: See photos, videos of peaceful march*, THE ADVOCATE (May 31, 2020), https://www.theadvocate.com/baton_rouge/multimedia/photos/collection_fc447130-a374-11ea-ba75-13e315745881.html#3.

[4] David Gray, *Gov. Edwards commends Louisiana's 'peaceful' protests after 'egregious' death of George Floyd*, THE LIVINGSTON PARISH NEWS (June 2, 2020), https://www.livingstonparishnews.com/breaking_news/gov-edwards-commends-louisiana-s-peaceful-protests-after-egregious-death-of-george-floyd/article_8c81f514-a506-11ea-b00a-cffba12e8440.html.

[5] Melinda Deslatte, *Louisiana governor praises state's peaceful Floyd protests*, AP NEWS (June 3, 2020), https://apnews.com/51fd29f1cd6bd7e6d2bea8799117fec8.

10

Case: 20-30358    Document: 00515456754    Page: 11    Date Filed: 06/18/2020
Case 3:20-cv-00282-BAJ-EWD    Document 76    06/18/20    Page 11 of 13

No 20-30358

system to cases of religious hardship without compelling reason.") (quotations omitted).

## II.

The Governor may respond that his order forbids *only* indoor worship but still allows people of faith to worship outdoors. But whether health experts would endorse that dichotomy—and whether the First Amendment permits it—is far from obvious.[6]

Underinclusive rules fail strict scrutiny just as overinclusive ones do. A "law cannot be regarded as protecting an interest of the highest order when it leaves appreciable damage to that supposedly vital interest unprohibited." *Lukumi*, 508 U.S. at 547 (cleaned up). To survive strict scrutiny, then, the Governor must show that a rule restricting indoor worship, while exempting outdoor worship, is narrowly tailored to further a compelling interest.

That may not be easy. Plaintiffs can presumably find health experts who say outdoor protests present serious health concerns.[7] They might also find health experts who support and encourage the protests, not because they pose no health risk, but because their social value outweighs any risk.[8]

Such support for the protests reflects a commendable commitment to equality. But public officials cannot devalue people of faith while elevating certain protestors. That would offend the First Amendment—not to mention the principle of equality for which the protests stand.

---

[6] Under his logic, the Governor would allow tens of thousands of LSU fans to assemble this fall under the open sky at Tiger Stadium, while forbidding countless others from cheering on the Saints under the Superdome.

[7] *See, e.g.*, Morgan Winsor, *Dr. Fauci voices concerns about coronavirus spreading amid nationwide protests*, ABC NEWS (June 10, 2020), https://abcnews.go.com/US/dr-fauci-voices-concerns-coronavirus-spreading-amid-nationwide/story?id=71171103.

[8] *See, e.g.*, Jamie Ducharme, *"Protest Is a Profound Public Health Intervention." Why So Many Doctors Are Supporting Protests in the Middle of the Covid-19 Pandemic*, TIME (June 10, 2020), https://time.com/5848212/doctors-supporting-protests/.

Case: 20-30358    Document: 00515456754    Page: 12    Date Filed: 06/18/2020
Case 3:20-cv-00282-BAJ-EWD    Document 76    06/18/20    Page 12 of 13

No 20-30358

\* \* \*

None of this is to say that Pastor Spell and his parishioners *should* ignore the advice of health experts. But the same is true for the protestors. No doubt many other Louisianans would have protested too, but for the advice of health experts. The point here is that state and local officials gave them the choice. Those officials took no action when protestors chose to ignore health experts and violate social distancing rules. And that forbearance has consequences.

The First Amendment does not allow our leaders to decide which rights to honor and which to ignore. In law, as in life, what's good for the goose is good for the gander. In these troubled times, nothing should unify the American people more than the principle that freedom for me, but not for thee, has no place under our Constitution.

I concur in the dismissal of this appeal as moot, but in anticipation that a future appeal may turn out very differently.

# United States Court of Appeals
**FIFTH CIRCUIT**
OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

June 18, 2020

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

   No. 20-30358   Mark Spell, et al v. John Edwards, et al
                 USDC No. 3:20-CV-282

Enclosed is an order entered in this case.

                            Sincerely,

                            LYLE W. CAYCE, Clerk

                            By: _____
                            Nancy F. Dolly, Deputy Clerk
                            504-310-7683

Mr. Kirk Norris Aurandt
Mr. Matthew F. Block
Mrs. Darnell Bludworth
Mrs. Ashley Michelle Caruso
Mr. Christopher T. Chocheles
Mrs. Mary G. Erlingson
Mr. Joshua Simon Force
Mr. James M. Garner
Ms. Tara L. Johnston
Mr. Richard Brian Katskee
Mr. Alex J. Luchenitser
Mr. Roy Moore
Mrs. Sheri Marcus Morris
Mr. William P. Quigley
Mr. Jack M. Weiss
Mr. Jeffrey Scott Wittenbrink