UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MARK ANTHONY SPELL, ET AL.                              CIVIL ACTION

VERSUS

JOHN BEL EDWARDS, ET AL.                        NO. 20-00282-BAJ-EWD

## RULING AND ORDER

Before the Court is Plaintiffs, Mark Anthony Spell and Life Tabernacle Church's **Motion for Leave to Oppose Defendants' Motions to Dismiss (Doc. 87).** Plaintiffs ask for leave because they did not timely file a Motion to Oppose Defendants' Motions to Dismiss (Docs. 74, 78, 80). In light of this fact, Defendant John Bel Edwards filed a Motion for Entry of Judgment on Unopposed Motion to Dismiss Under Federal Rule of Civil Procedure 12 (Doc. 85). For the reasons stated herein, Plaintiffs' Motion is **DENIED**, Defendant Edwards's Motion for Entry of Judgment is **DENIED**, Defendants' Motions to Dismiss are **GRANTED**, and Plaintiffs' claims against Defendant are **DISMISSED WITH PREJUDICE**.

## I.    RELEVANT BACKGROUND

### A. Relevant Facts

Like all states[1] the State of Louisiana, governed by Defendant John Bel

---

[1] "All states have taken coronavirus-related actions, but restrictions vary, and so does the length of time the measures are in place." Dena Bunis & Jenny Rough, *List of Coronavirus-Related Restrictions in Every State,* AARP (Nov. 9, 2020), https://www.aarp.org/politics-society/government-elections/info-2020/coronavirus-state-restrictions.html.

Edwards (the "Governor"), declared a statewide public health emergency in the face of the COVID-19 pandemic (Doc. 1-3 at p. 15). During this time of crisis, the Governor's office issued proclamations outlining restrictions on certain activities in light of the State's evolving response to the pandemic.[2] At the beginning of the crisis the Governor's proclamations, under guidance issued to all states by the Centers for Disease Control and Prevention, imposed tight restrictions upon the ability of all persons to gather and congregate in a variety of contexts, including worship. (Doc. 21 at p. 5). These proclamations were issued to promote efforts to limit the rapid spread of COVID-19 and have changed as guidance related to transmission of the virus has changed. To date there is no vaccine, no known cure, and no effective treatment for the virus, and restrictions remain in place in various ways throughout the country.

Plaintiff Mark Anthony Spell is the pastor of Plaintiff Life Tabernacle Church, located in the Baton Rouge area. (Doc. 58 at ¶¶ 3–4). Plaintiffs allege that the restrictions contained in the Governor's proclamations violate their constitutional rights under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and applicable state statutory and constitutional provisions. (Doc. 58). Plaintiffs sued Defendants—the Governor, Roger Corcoran (the "Chief of Police"), and Sid Gautreaux (the "Sheriff")—to have the restrictions against them imposed on May 29, 2020 enjoined as unconstitutional. (Doc. 58 at ¶ 2). Plaintiff Spell

---

[2] Under the Louisiana Homeland Security and Emergency Assistance and Disaster Act, the Governor may issue executive orders, proclamations, and regulations that carry the force and effect of law. *See* La. Stat. Ann. § 29:724.

2

additionally seeks to be compensated for the deprivation of his constitutionally protected rights.

### B. Procedural History

On May 7, 2020, Plaintiffs filed a Complaint against Defendants, along with a Motion for Temporary Restraining Order, in an attempt to prevent the enforcement of one of the Governor's proclamations, which restricted the gathering of more than ten people in a single space indoors at a single time. On May 15, 2020, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2) was denied by this Court. (Doc. 46). The Plaintiffs subsequently filed an Amended Complaint on May 29, 2020. (Doc. 58). Plaintiffs also immediately appealed the denial of the temporary restraining order to the United States Court of Appeals for the Fifth Circuit. The appeal was dismissed as moot on June 18, 2020. *See Spell v. Edwards*, 962 F.3d 175, (5th Cir. 2020).

On June 16, 2020, the Governor filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) & (6). (Doc. 74). The Sheriff and the Chief of Police filed Rule 12(b)(6) Motions to Dismiss on June 26, 2020 (Doc. 78) and July 6, 2020 (Doc. 80). Local Rule 7(f) provides "Each respondent opposing a motion shall file a response, including opposing affidavits, memorandum, and such supporting documents as are then available, within twenty-one days after service of the motion."

Plaintiffs were therefore required to file an opposition to these motions by, at the latest, July 27, 2020, but failed to do so. Therefore, the September 2, 2020 Motion for Leave to Oppose Defendants' Motions to Dismiss is at best a month overdue. As

such, it is within the Court's discretion to treat the Motions to Dismiss as unopposed. *See, e.g. Nelson v. Star Enterprise*, 220 F.2d 587 (5th Cir. 2000).

## II.    Motion for Leave

Prior to addressing the merits of Plaintiffs' claims, the Court must determine whether to grant Plaintiffs Motion for leave to respond to Defendants' Motions to Dismiss. As is discussed below, the Court will not grant leave to oppose Defendants' Motions to Dismiss. However, the Governor's request that we grant his motion to dismiss solely because Plaintiffs failed to timely file their opposition is too harsh a sanction, and as such will be denied. [3]

### A. Standard

Plaintiffs' Motion for Leave seeks relief from requirements and deadlines imposed by the Court's Local Rules. Federal Rule 83(a)(1) permits the Court to establish local rules. A valid local rule has the force of law. *Weil v. Neary*, 278 U.S. 160, 169 (1929); *Jetton v. McDonnell Douglas Corp.*, 121 F.3d 423, 426 (8th Cir. 1997). Litigants "are charged with knowledge of the district court's rules the same as with knowledge of the Federal Rules and all federal law." *Jetton*, 121 F.3d at 426. The Court's local rules require that each respondent opposing a motion file a

---

[3] The Governor's "Motion for Entry of Judgment" does not rely on a Federal Rule of Civil Procedure, nor any case law, to support his proposition that an unopposed motion to dismiss results in an entry of judgment as a matter of course. Judgments are governed by Federal Rule of Civil Procedure 58, which merely addresses the manner in which Judgments are entered upon disposition of a proceeding. Motions to dismiss, governed by Rule 12, instead address the disposition of proceedings prior to judgment. As such, the Court interprets the Governor's Motion for Entry of Judgment as a request to grant the Motion to Dismiss due to Plaintiffs' failure to timely file an opposition.

response to the motion within twenty-one days after service, unless upon a party's written motion, the Court finds good cause to shorten or extend the deadline. LR 7.4.

Generally, "[c]ourts have broad discretion in interpreting and applying their own local rules," *Matter of Adams*, 734 F.2d 1094, 1102 (5th Cir. 1984), and a party that "fails to comply with the Local Rules does so at his own peril." *Broussard v. Oryx Energy Co.*, 110 F. Supp. 2d 532, 537 (E.D. Tex. 2000). Absent a specific standard required by a Local Rule, this Court measures Plaintiffs' Motion for Leave for "good cause." *E.g., Chevron TCI, Inc. v. Capitol House Hotel Manager, LLC*, No. 18-cv-776, 2020 WL 1164835, at *1 n.1 (M.D. La. Mar. 11, 2020).

However, "the Fifth Circuit has not approved the automatic grant of motions that are dispositive on litigation on the ground that the nonmoving party failed to comply with local rules that require a party to file a response to an opposed motion." *Darville v. Turner Industries Group, LLC.*, 503 F.R.D. 91, 94 (M.D. La. 2015) (citing *John v. Louisiana (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 709 (5th Cir. 1985)). The Court views "the automatic grant of a dispositive motion, such as a dismissal with prejudice based solely on a litigant's failure to comply with a local rule, with considerable aversion." *Webb v. Morella*, 457 Fed. Appx. 448, 452 (5th Cir. 2012).

To dismiss a claim with prejudice based on a litigant's conduct, the Court must find "egregious and continued refusal to abide by the court's deadlines." *Id.* Where courts have affirmed a dismissal with prejudice based on failure to prosecute, courts has usually found "at least one of three aggravating factors: '(1) delay caused by [the]

5

plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct.' " *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d, 1188, 1191 (5th Cir. 1992) (quoting *Price v. McGlathery*, 792 F.2d 472, 474 (5th Cir. 1986)). The Court considers the dismissal of a claim with prejudice due solely to failing to abide by a Local Rule to be a "severe sanction that should be used only in extreme circumstances." *Webb*, 457 Fed. Appx. at 452. (quoting *Boazman v. Econ. Lab, Inc.*, 537 F2d. 210, 212 (5th Cir. 1976).

**B. Discussion**

Plaintiffs argue that because they were "actively pursuing the matter before the Court of Appeal" and are "presently preparing a petition for a writ of certiorari to the U.S. Supreme Court" the court should grant leave. (Doc. 87-1). Plaintiffs also note that one of their local counsel contracted and recovered from COVID-19 during the time that the responses to Defendants' motions were due. Plaintiffs argued that the attorney also physically relocated into new office space, thus accounting for the delay in the response.

While the court is sympathetic to the illness suffered by one of Plaintiffs' counsel, it is worth noting that two attorneys are enrolled as counsel of record in this matter, therefore this reason alone is not enough to establish good cause. Plaintiffs would like the Court to believe that while Plaintiffs were able to file their appeal to the Fifth Circuit on July 2, 2020, they had good cause to not file an opposition to the Governor's Motion to Dismiss a mere five days' later. Even if filing pleadings in the Fifth Circuit was so time consuming as to constitute "good cause", Plaintiffs' appeal

6

was denied as moot on July 22, 2020, again, five days' before the deadline to file an opposition to the final Defendant's Motion to Dismiss. Plaintiffs' explanation and excuse strain credulity.

However, dismissing the action on the merits would deny Plaintiffs the opportunity to be heard, and a one-month unexcused delay does not warrant the "severe sanction" which dismissal on the merits would otherwise require.

## III.   MOTION TO DISMISS

The Court will now analyze the merits of Plaintiffs' arguments, based on the facts set forth in Plaintiffs' Amended Complaint.

### A. Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*,

7

550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

### B. Discussion

Plaintiffs assert two claims: one for injunctive relief, and one for damages based on violations of a variety of Federal and State constitutional rights.[4] Given that the Proclamation Plaintiffs allege caused them harm has long since expired, their claim for injunctive relief is denied as moot. Further, Plaintiffs' claim for damages is denied in light of *South Bay United Pentecostal Church v. Newsom*, 207 L. Ed. 2d 154 (2020), as there has been no violation of federal law and therefore no damages.

### i. Plaintiffs' claims for injunctive relief are moot.

The Governor has issued six proclamations that restrict gatherings in, among other places, houses of worship over the past six months:

| Proclamation No. | Forbidding gatherings of: | Effective Date | Date Superseded |
|---|---|---|---|
| 27 JBE 2020 | 250 or more | March 13, 2020 | March 16, 2020 |
| 30 JBE 2020 | 50 or more | March 16, 2020 | March 22, 2020 |
| 33 JBE 2020 | 10 or more | March 22, 2020 | May 15, 2020 |
| 58 JBE 2020 | 25% or more | May 15, 2020 | June 5, 2020 |

---

[4] Plaintiffs allege violations under: the First Amendment's Free Exercise, Establishment, Freedom of Assembly, and Free Speech clauses; the Equal Protection Clause of the Fourteenth Amendment; as well as the Freedom of Assembly and Freedom of Speech clauses of the Louisiana Constitution; and the Louisiana Homeland Security and Emergency Assistance and Disaster Act.

| 74 JBE 2020  | 50% or more | June 5, 2020  | Sep. 11, 2020 |
| 117 JBE 2020 | 75% or more | Sep. 11, 2020 | N/A           |

The proclamations that formed the basis of the original suit, 30 JBE 2020 and 33 JBE 2020, have expired. The Governor has issued at least three superseding Proclamations, all of which have imposed fewer and fewer restrictions on religious gatherings, following the natural expiration of the previous proclamations.

It is true that "a defendant cannot automatically moot a case simply by ending its [allegedly] unlawful conduct once sued," *Already, LLC v. Nike Inc.*, 568 U.S. 85, 91 (2013). Nevertheless, where executive orders and statutes expire on their own terms the court is not concerned about "mere litigation posturing" where a defendant engages in unlawful conduct, stops once sued, and repeats the unlawful conduct once litigation is terminated. *Spell v. Edwards*, 962 F.3d at 179. (citing *Trump v. Hawaii*, ___ U.S. ___, 138 S. Ct. 2392). Plaintiffs have failed to offer evidence that the Governor is attempting to evade litigation, as the proclamations have all expired on their own terms. Therefore, Plaintiffs' request for injunctive relief is moot.

Plaintiffs allege that their injuries fall under an exception to mootness, as the harm is capable of repetition, yet evading review. This exception to the mootness doctrine applies only in exceptional situations in which (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. *See, e.g., Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016); *United States v. Juvenile Male*, 564 U.S. 932, 938 (2011).

By Plaintiffs' count, the average length of each order is thirty-three days.

Thus, the first requirement for this exception is satisfied. (Doc. 92 at p. 3). However, Plaintiffs have not been subject to the same action again, and there is no evidence that they will be subject to such restrictions in the future. The trend in the Governor's proclamations has been to *reduce* restrictions on gatherings, rather than to increase them.

Further, the Fifth Circuit has noted that this exception exists to "keep a case alive, largely out of a fear that the legal questions posed by cases prone to becoming moot will never be answered." *Spell*, 962 F.3d at 180. Even if there were a reasonable expectation that Plaintiffs would be subject to the same action again, the legal questions in this case have been answered by the United States Supreme Court in *South Bay United Pentecostal Church*. There is no concern that the conduct, should it be repeated, will be found unlawful.

As such, this exemption does not apply, and Plaintiffs claims are moot.

### ii. Plaintiffs cannot recover damages, as there has been no violation of federal law.

Plaintiffs correctly note that their claim for damages under the expired Proclamations do not become moot merely because the condition that created the harm no longer exists. *See, e.g., Campbell v. Lamar Inst. Of Tech.*, 842 F.3d 375, 379 (5th Cir. 2016). Thus, they are still entitled to pursue their claim for damages. However, the Governor's Proclamations do not violate federal law. Therefore, Plaintiffs are not entitled to a recovery of damages.

The Supreme Court has always recognized that religious freedom does not act as an absolute shield against generally applicable laws. *See, e.g., Reynolds v. United*

*States,* 98 U.S. 145 (1879) (holding that Congress could outlaw the practice of polygamy, though it could not outlaw the belief). Traditionally, under the Free Exercise Clause, "neutral generally applicable laws" are subject to rational basis review, even where they are applied to religious practice. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 694 (2014) (citing *City of Boerne* v. *Flores*, 521 U. S. 507, 514 (1997)). Facial neutrality, however, is not determinative. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993). Conversely, a law burdening religious practice that is not neutral or not of general application must undergo strict scrutiny. *Id.* at 546.

Expressive association is treated similarly. Despite the importance of the right to association, restriction of the right of expressive association during a public health emergency such as a global pandemic is weighed under the Supreme Court's decision in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905). There, the Court held that "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members" and can restrict individual liberties. Such restrictions may only be overturned if the measure "has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law." 197 U.S. 11, 27, 31 (1905) (citation omitted) (*reaff'd, S. Bay United Pentecostal Church v. Newsom*, 140 S.Ct. 1613 (2020)).

Where similar limitations are placed on secular organizations, numerical limits on religious gatherings during the COVID-19 pandemic were upheld by the Supreme Court in *South Bay United Pentecostal Church*. There, the Court denied an

11

application by a church to enjoin California Governor Gavin Newsom's proclamation, which limited attendance at places of worship to "25% of building capacity or a maximum of 100 attendees" in an effort to limit the spread of COVID-19, under the Free Exercise Clause. *Id.* at 1613 (Roberts, J., concurring).

Chief Justice Roberts, concurring in the denial of application for injunctive relief, concluded that these guidelines appeared to be consistent with the Free Exercise Clause of the First Amendment, as "similar or more severe restrictions appli[ed] to comparable secular gatherings." *Id.* The Chief Justice highlighted the fact that the California Order only exempts or treats more leniently "dissimilar activities, such as operating grocery stores, banks, and laundromats, in which people neither congregate in large groups nor remain in close proximity for extended periods." *Id.* at 1613. This is consistent with the growing consensus of courts across the country who have held that where laws or proclamations issued during the pandemic are neutrally applied, or where religious gatherings are given favored treatment, there is no First Amendment Violation.[5]

Governor Edwards's Proclamations have always treated comparable secular

---

[5] *See, e.g. Elim Romanian Pentecostal Church v. Prtizker*, 962 F.3d 341, (7th Cir. 2020) (citing *Jacobson* in upholding an executive order that limited the size of public assemblies, including religious services, against a free exercise challenge and explaining that courts do not evaluate orders issued in response to public-health emergences by the usual standard); *Lighthouse Fellowship Church v. Northam*, No. 2:20cv204, 2020 U.S. Dist. LEXIS 80289, at *25 (E.D. Va. May 1, 2020) (denying a TRO on the grounds that the Virginia's governor's order banning all gatherings of more than ten individuals was facially neutral); *Calvary Chapel of Bangor v. Mills*, No. 1:20-cv-00156-NT, 2020 U.S. Dist. LEXIS 81962, at *20 (D. Me. May 9, 2020) ("[I]n this free exercise analysis, the question is not whether any secular entity faces fewer restrictions than any religious one" but whether *comparable* secular entities do.).

institutions similarly to comparable religious institutions. In the earliest days of the pandemic, the only businesses or individuals who were treated more leniently than religious organizations were essential workers and businesses, such as healthcare workers and grocery stores. With every restriction on places of worship, identical or more stringent restrictions have been placed on similarly situated secular businesses. Indeed, religious organizations have often been privileged over similar secular businesses. This is demonstrated most recently under Proclamation No. 117 JBE 2020, which places most jurisdictions in Louisiana in Phase 3 of "Resilient Louisiana."[6] Section 2(D)(4) entitled "Churches and other faith-based organizations" states that, so long as an establishment does not exceed 75% of its total occupancy and adheres to social distancing between households, services may be held indoors. Further, churches are explicitly excluded from Proclamation No. 117 JBE 2020's Section 2(E), which limits crowd sizes to a maximum of 250 people. Multiple versions of the Proclamations which restrict social gatherings thus far, including the versions challenged by Plaintiffs, have classified "travel to and from places of worship" as an essential activity, thereby implying that it is permissible under the order to visit churches, and by extension, that churches may continue to conduct worship services, albeit not at full capacity, while other businesses were required to remain closed.

---

[6] Resilient Louisiana is a state commission charged with examining Louisiana's economy amid the COVID-19 pandemic and making recommendations for more resilient business-related activities and commerce in the coming months. *See Resilient Louisiana Commission,* LA. ECON. DEV., https://guides.libraries.uc.edu/c.php?g=222561&p=1472886 (last visited Nov. 4, 2020). It is used as shorthand for economic recovery from COVID-19. *See, e.g.* La. Exec. Dep't, Proclamation No. 117 JBE 2020 (Sept. 11, 2020).

(Doc. 1-3 at p. 8).

To the extent that Plaintiffs argue that *any* restrictions on their right to gather violate the U.S. Constitution, they are clearly incorrect. *See, Jacobson*, 197 U.S. at 29 (1905). Even the dissent in *South Bay United Pentecostal Church* highlighted the fact that the plaintiffs were "willing to abide by the State's rules that apply to comparable secular business, including the rules regarding social distancing and hygiene" favorably. *Id.* at 1614 (Kavanaugh, J., dissenting). As an alternative to the discrimination between secular and religious organizations that the Dissent believed existed, Justice Kavanaugh argued that "the State could insist that the congregants adhere to social-distancing and other health requirements." *Id.* It is important to note that Justice Kavanaugh did not opine on whether the state should permit the church to worship in person with no restrictions at all.

As such, no federal statute or constitutional provision requires that this Court order the state of Louisiana to permit Plaintiffs to hold services at 100% capacity—the relief Plaintiffs request (Doc. 92 at p. 3)—in the middle of an evolving pandemic that has killed well over a 1,000,000 people world-wide, including 233,000 in the United States to date. *See, Covid World Map: Tracking the Global Outbreak*, N.Y. Times, (Nov. 4, 2020). The overwhelming consensus of courts throughout the United States reveals that reasonable restrictions on religious gatherings comply with Constitutional standards.

Because there has been no violation of federal law, Plaintiffs harms under the Proclamations survive constitutional review. Thus, Plaintiffs' claim for damages are

dismissed.

### C. State Law Claims

As there is no federal question jurisdiction, this Court declines to exercise supplemental jurisdiction over any State law claims, and thus dismisses this case.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Leave to Oppose Defendants' Motions to Dismiss is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motions to Dismiss are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants John Bel Edwards, Roger Corcoran, and Sid Gautreaux are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over any state law claims.

A separate judgment will be issued.

Baton Rouge, Louisiana, this _10th_ day of November, 2020

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**