UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| MARK ANTHONY SPELL, ET AL.<br>Plaintiffs,<br><br>VERSUS<br><br>JOHN BEL EDWARDS, ET AL.,<br>Defendants. | Case No. 3:20-cv-00282-BAJ-EWD<br>Judge Brian A. Jackson<br>Magistrate Judge Erin Wilder-Doomes |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT JOHN BEL EDWARDS'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT ON REMAND FROM FIFTH CIRCUIT**

JEFF LANDRY
Attorney General

JACK M. WEISS (# 13340)
*Lead Counsel*
Attorney at Law
5938 Laurel Street
New Orleans, LA 70115
Telephone/Facsimile: (504) 267-0637
Email: jack1656@gmail.com
Special Assistant Attorney General

MATTHEW F. BLOCK (# 25577)
Executive Counsel
Office of the Governor
Louisiana State Capitol
4th Floor
Baton Rouge, Louisiana 70804
Telephone: (225) 342-7015
Email: matthew.block@la.gov

JAMES M. GARNER (# 19589), T.A.
DARNELL BLUDWORTH (# 18801)
JOSHUA S. FORCE (# 21975)
CHRISTOPHER T. CHOCHELES (# 26848)
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112-1033
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
Email: jgarner@shergarner.com
dlbudworth@shergarner.com
jforce@shergarner.com
cchocheles@shergarner.com
Special Assistant Attorneys General

Attorneys For Defendant
GOVERNOR JOHN BEL EDWARDS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 1

A. Plaintiffs' Claims for Permanent Injunctive Relief Remain Moot Despite the Recent Surge in COVID-19 Cases ........ 1

B. The Governor Enjoys Qualified Immunity From Plaintiffs' Claims for Monetary Damages Pleaded Against Him in His Individual Capacity ........ 3

C. The Challenged Proclamations Did Not Violate Plaintiffs' Constitutional Rights ........ 6

1. Free-Exercise Clause ........ 6

2. Establishment Clause ........ 7

3. Freedom of Speech and Assembly; Equal Protection ........ 8

D. The Governor Enjoys Sovereign Immunity From Plaintiffs' Injunction and State-Law Claims Under the Eleventh Amendment ........ 9

III. CONCLUSION ........ 10

**TABLE OF AUTHORITIES**

**CASE** **PAGE(S)**

*Benner v. Wolf*,
No. 1:20-CV-0075, 2021 WL 4123973
(M.D. Pa. Sept. 9, 2021) .......... 5

*Calvary Chapel Dayton Valley v. Sisolak*,
140 S. Ct. 2603 (2020) .......... 5, 6

*Employment Div., Dep't of Human Res. of Or. v. Smith*,
494 U.S. 872 (1990) .......... 6

*Gaines v. Wardynski*,
871 F.3d 1203 (11th Cir. 2017) .......... 3

*In re Abbott*,
954 F.3d 772 (5th Cir. 2020), *vacated as moot by*
*Planned Parenthood v. Abbott*, 141 S. Ct. 1261 (2021) ("*Abbott II*") .......... 4, 8

*Jackson v. City of Hearne, Tex.*,
959 F.3d 194 (5th Cir. 2020) .......... 7

*Jacobson v. Commonwealth of Mass.*,
197 U.S. 11 (1905) .......... 4, 8, 9-10

*Littlefield v. Forney Indep. Sch. Dist.*,
268 F.3d 275 (5th Cir. 2001) .......... 7

*Northland Baptist Church of St. Paul, Minn. v. Walz*,
Case No. 20-cv-1100 (WMW/BRT), 2021 WL 1195821 (D. Minn. Mar. 30, 2021),
*appeal docketed*, Case No. 21-2283 (8th Cir. June 10, 2021) .......... 5

*Pleasant View Baptist Church v. Beshear*,
Civil No. 2:20-cv-00166-GFVT-CJS, 2021 WL 4496386
(N.D. Ill. Sept. 30, 2021) .......... 5

*Prince v. Massachusetts*,
321 U.S. 158 (1944) .......... 4

*Roman Catholic Diocese of Brooklyn, N.Y. v. Cuomo*,
141 S. Ct. 63 (2020) (per curiam) .......... 2, 5, 6

**TABLE OF AUTHORITIES—continued**

**CASE** **PAGE(S)**

*South Bay United Pentecostal Church v. Newsom*,
140 S. Ct. 1613 (2020) ("*South Bay I*")....................8

*South Bay United Pentecostal Church v. Newsom*,
141 S. Ct. 716 (2021) ("*South Bay II*")....................5, 6

*Spell v. Edwards*,
962 F.3d 175 (5th Cir. 2020) ("*Spell I*")....................2

*Spell v. Edwards*,
849 F. App'x 509 (5th Cir. 2021) (per curiam) ("*Spell II*")....................1

*Tandon v. Newsom*,
141 S. Ct. 1294 (2021) (per curiam)....................2-3, 5, 6

*Wayte v. United States*,
470 U.S. 598, 607 (1985)....................7

*Zinman v. Nova Se. Univ., Inc.*,
Case No. 21-CV-60723-RUIZ/STRAUSS, 2021 WL 4025722
(S.D. Fla. Aug. 30, 2021), *report & recommendation adopted*,
2021 WL 4226028 (S.D. Fla. Sept. 15, 2021)....................5

**CODES AND STATUTES**

LA. REV. STAT. § 29:736(D)....................10

**OTHER AUTHORITIES**

Drew Broach, *Spanish flu hit New Orleans hard, but there are lessons for today's coronavirus fight* (Mar. 13, 2020),
https://www.nola.com/news/coronavirus/article_d430f5f8-657e-11ea-8e4a-8b5b4e421afe.html....................8

MAY IT PLEASE THE COURT:

Governor Edwards files this Reply Memorandum in support of his Motion to Dismiss Plaintiffs' Amended Complaint, Rec. Doc. 119, and in response to Plaintiffs' Opposition to Defendants' Motions to Dismiss on Remand from the Fifth Circuit ("Opposition"), Rec. Doc. 121.[1]

## I. INTRODUCTION

The Fifth Circuit remanded this case for the Court to "analyze the plaintiffs' claims for damages in light of [recent] Supreme Court authority" and to review "the merits of the immunity defenses raised by the defendants . . . in the first instance." *Spell v. Edwards*, 849 F. App'x 509, 510 (5th Cir. 2021) (per curiam) ("*Spell II*"). The Motion to Dismiss addresses that authority and the Governor's immunity defenses. Although Plaintiffs acknowledge these remand instructions, they neither analyze the recent authority nor respond directly to the Governor's dispositive arguments. Rec. Doc. 121 at 7, 17. Instead, Plaintiffs present a watered-down and repackaged version of their prior arguments based largely on factual assertions outside the Amended Complaint. The Court should grant the motion and dismiss Plaintiffs' claims with prejudice.

## II. ARGUMENT

### A. Plaintiffs' Claims for Permanent Injunctive Relief Remain Moot Despite the Recent Surge in COVID-19 Cases.

Plaintiffs argue that their claims are not moot because the prior "'trend of reopening' . . . is now nonexistent." According to Plaintiffs, the Governor "tighten[ed] assembly restrictions in July 2020," reinstated a statewide mask mandate, and recognized the significant rise in cases in Louisiana due to the Delta variant. *Id.* at 9-10. Contrary to Plaintiffs' contentions, however, these widely separated actions do not prove that Plaintiffs "remain under a constant threat" that the

[1] This Reply Memorandum uses the same capitalized, defined terms as those in the Governor's Memorandum in Support of his Motion to Dismiss—Rec. Doc. 119-1.

Governor will reinstate the prior restrictions. Plaintiffs' injunction claims therefore remain moot. *Roman Catholic Diocese of Brooklyn, N.Y. v. Cuomo*, 141 S. Ct. 63, 68 (2020) (per curiam). Plaintiffs cite 89 JBE 2020, which the Governor issued effective July 13, 2020—fifteen months ago—as evidence that "he broke the trend of reopening immediately after *Spell I* by tightening assembly restrictions in July 2020." Rec. Doc. 121 at 9. As Plaintiffs concede, however, 89 JBE 2020 did *not* impose those greater restrictions *on churches*. *See id.* Since *Spell I*, the Governor has not reimposed any gathering-size limits on churches, which he removed entirely on March 3, 2021. In fact, there is no real and substantial threat of the Governor reinstating the early COVID-19 quantitative assembly limitations on churches, which faded into history many months ago.

Plaintiffs' references to the current statewide mask mandate, Rec. Doc. 121 at 5-6, also fail to revive their moot injunction claims. The mask mandate is not at issue in this lawsuit. The Amended Complaint does not contain any allegations regarding the mask mandate or plead that it has violated Plaintiffs' constitutional rights.[2] Likewise, the fact that the Governor recognized the seriousness of the recent surge in COVID-19 cases due to the Delta variant does not create a real and substantial threat that he will reinstate the gathering-size limitations on churches. Indeed, despite that surge, the Governor did not limit the size of church gatherings, choosing to fight the surge through other mitigation measures, which have largely proved effective.

It remains wholly "speculative, at best, that the Governor might reimpose" any gathering limits on churches, *Spell v. Edwards*, 962 F.3d 175, 180 (5th Cir. 2020) ("*Spell I*"), and Plaintiffs have failed to rebut the Governor's arguments demonstrating that their claims for permanent injunctive relief are moot under *Roman Catholic Diocese* and *Tandon v. Newsom*, 141 S. Ct. 1294

[2] Plaintiffs have attacked the mask mandate in a second lawsuit, Case No. 3:21-cv-00423 (the "Second Spell Suit"), which has been consolidated with this one. The Governor has filed a separate Motion to Dismiss demonstrating why Plaintiffs' allegations concerning the mask mandate in that case utterly fail to state a claim for relief. See Rec. Doc. 13-1 at 9-12, which has been made a part of the docket in this case.

(2021) (per curiam). *See* Rec. Doc. 119-1 at 6-7. Plaintiffs have also failed to respond to the Governor's arguments showing that their claims do not fall within any exception to the mootness doctrine. As even the Fifth Circuit has recognized, Plaintiffs have not been diligent and, thus, cannot complain now that they will be unable to challenge any imagined future restrictions. *See id.* at 8-9. The permanent injunctive relief claims are moot and should be dismissed.

**B. The Governor Enjoys Qualified Immunity From Plaintiffs' Claims for Monetary Damages Pleaded Against Him in His Individual Capacity.**

Plaintiffs rest their response to the Governor's qualified immunity defense on the "obvious clarity" test, citing, *inter alia*, *Gaines v. Wardynski*, 871 F.3d 1203 (11th Cir. 2017). *See* Rec. Doc. 121 at 11-12. *Gaines* recognized that this method for proving that a state official has violated a "clearly established" constitutional or statutory right applies only rarely in exceptional cases. "Obvious clarity" cases only "exist where the words of the federal statute or constitutional provision at issue are 'so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful,' or where the case law that does exist is so clear and broad (and 'not tied to particularized facts') that 'every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted.'" *Gaines*, 871 F.3d at 1209 (citations omitted). Neither scenario remotely applies here.

Plaintiffs have not identified the text of any constitutional provision that, on its face, so clearly supports their claims that it satisfies the "clearly established" prong of the qualified immunity test. Instead, Plaintiffs merely repeat the same general constitutional arguments they have made previously. *See* Rec. Doc. 121 at 12. The judicial treatment of COVID-19 regulations by dozens of courts since the pandemic's onset refutes any suggestion, however, that the constitutional principles at issue are so clear and the Governor's conduct so demonstrably unlawful that they satisfy this exceptional standard. On the contrary, the overwhelming weight of judicial

authority during the early COVID-19 period supports, rather than undermines, the constitutionality of the Governor's initial response, including the limits on churches of which Plaintiffs complain.

Plaintiffs ignore this pre-*Roman Catholic Diocese* authority, Rec. Doc. 119-1 at 10-12; Rec. Doc. 119-2, simply dismissing it as too late to explain the Governor's orders. *See* Rec. Doc. 121 at 15. The Challenged Proclamations were issued between March 13, 2020 and May 14, 2020. The numerous contemporaneous court decisions upholding similar restrictions disprove Plaintiffs' suggestion that the constitutional principles they invoke are so clear and the Governor's actions so egregious that they do not need to cite any caselaw establishing the unconstitutionality of his actions. For example, the Fifth Circuit decided *Abbott II* (*In re Abbott*, 954 F.3d 772 (5th Cir. 2020)) on April 7, 2020—a month before Plaintiffs filed this suit—and relied on *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), in declaring that a governor may reasonably restrict *all constitutional rights*, including peaceable assembly and public worship, to fight a public health emergency like COVID-19. *See* Rec. Doc. 119-1 at 11. Moreover, the Supreme Court's warning in *Prince v. Massachusetts*, 321 U.S. 158, 166-67 (1944), that the "right to practice religion freely does not include the liberty to expose the community . . . to communicable diseases" refutes Plaintiffs' attempt to limit our Founding Fathers' acknowledgement that religious liberty does not allow an individual to endanger the "private peace" only to "historical offenses like polygamy or human sacrifice." Rec. Doc. 121 at 14; *see also* Rec. Doc. 119-1 at 20 n.6.

Plaintiffs have also failed to prove that the general caselaw they cite is so "clear and broad" that every "objectively reasonable" state official facing the pandemic would have known that imposing gathering-size limits on churches and other similar businesses violated federal law at the time they imposed those restrictions. Like Governor Edwards, many governors limited the size of gatherings in response to the pandemic. To say the least, it was not clear and obvious to *every*

objectively reasonable state official that crowd-size limits violated the First Amendment or other constitutional rights. Further, the federal courts—including the Supreme Court in *South Bay I* and *Calvary Chapel*—overwhelmingly approved the kinds of limits imposed by the Challenged Proclamations while they were in effect in 2020. *See* Rec. Doc. 119-2. Even the dissenting Justices in those cases recognized that, at the outset of the pandemic (when the Challenged Proclamations were issued and in effect), public officials might "not [have been] able to craft precisely tailored rules" and, thus, it might "be appropriate for courts to tolerate very blunt rules." *Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603, 2604-05 (2020) (Alito, J., dissenting).

For these reasons, district courts have dismissed similar suits for money damages under the qualified immunity doctrine even following *Roman Catholic Diocese*, *South Bay II*, and *Tandon*. *See* Rec. Doc. 119-1 at 13, 25. *See also Pleasant View Baptist Church v. Beshear*, Civil No. 2:20-cv-00166-GFVT-CJS, 2021 WL 4496386 (N.D. Ill. Sept. 30, 2021) (constitutional claims for halting in-person school classes); *Benner v. Wolf*, No. 1:20-CV-0075, 2021 WL 4123973 (M.D. Pa. Sept. 9, 2021) (business-closure, school-closure, and stay-at-home orders); *Zinman v. Nova Se. Univ., Inc.*, Case No. 21-CV-60723-RUIZ/STRAUSS, 2021 WL 4025722 (S.D. Fla. Aug. 30, 2021) (claim that mask mandate violated religious rights), *report & recommendation adopted*, 2021 WL 4226028 (S.D. Fla. Sept. 15, 2021); *Northland Baptist Church of St. Paul, Minn. v. Walz*, Case No. 20-cv-1100 (WMW/BRT), 2021 WL 1195821 (D. Minn. Mar. 30, 2021) (claims that gathering-size limitations violated free-exercise, free-speech, free-assembly, property, and equal-protection rights), *appeal docketed*, Case No. 21-2283 (8th Cir. June 10, 2021). In contrast, Plaintiffs have cited no case that has denied qualified immunity, and we know of none.

Lastly, Plaintiffs admit that they "continued to meet in person" despite the Challenged Proclamations. Rec. Doc. 121 at 2; *see also id.* at 3. Thus the Challenged Proclamations did not

harm them. The Court should dismiss Plaintiffs' claims for money damages because they cannot prove that they suffered any harm. *See* Rec. Doc. 119-1 at 15 n.4.

**C. The Challenged Proclamations Did Not Violate Plaintiffs' Constitutional Rights.**

Plaintiffs have also failed to show that the Challenged Proclamations violated their constitutional rights. Plaintiffs cannot therefore satisfy the first prong of the qualified immunity test *and* have not stated a claim upon which relief can be granted.

**1. Free-Exercise Clause.**

Plaintiffs base their free-exercise claim on *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990), but mischaracterize it. The Supreme Court did not, as Plaintiffs state, "view[ ] the State as completely powerless to prohibit 'assembling with others for a religious worship service' if it was 'engaged in for religious reasons,'" which would describe every religious service. Rec. Doc. 121 at 16 (quoting *Smith*, 494 U.S. at 879 [sic]). *Smith* held that the Free Exercise Clause prevents the state from prohibiting religious acts if it seeks to ban those "acts or abstentions *only* when they are engaged in for religious reasons . . ." but does not regulate similar secular activities. 494 U.S. at 877 (emphasis added). The Challenged Proclamations did not single out churches, which were treated the same as or better than other comparable, similarly situated businesses. *See* Rec. Doc. 119-1 at 15-17. *South Bay II* and *Calvary Chapel* likewise reject Plaintiffs' contention that the Free Exercise Clause precludes the state from imposing *any* limitations on the size of worship services.[3] *See id.* at 18, 20.

Plaintiffs also repeat their obsessive criticism of the Governor's response to last year's Black Lives Matter protests. *See* Rec. Doc. 121 at 5-6, 17. The protests occurred after Plaintiffs

[3] The Governor's motion distinguishes *Roman Catholic Diocese* and *Tandon* as instructed by the Fifth Circuit. *See* Rec. Doc. 119-1 at 17-18. The Opposition does not respond to those arguments.

filed their Amended Complaint, and, consequently, the Amended Complaint pleads no allegations or claims concerning those protests. Regardless, the protests do not support Plaintiffs' claims, which concern limits on *indoor* gatherings. The Proclamations in effect at the time of the *outdoor* protests exempted churches from the crowd-size restrictions imposed on other outdoor gatherings. *See* Rec. Doc. 119-1 at 3-4. Thus Plaintiffs challenge, at most, the alleged enforcement of various limits. Selective enforcement claims have been deemed "ill-suited for judicial review," however, and courts defer to them when, as here, they are not based upon the suppression of religion and are necessary to serve an important governmental interest. *Wayte v. United States*, 470 U.S. 598, 607, 611 (1985); *see also Jackson v. City of Hearne, Tex.*, 959 F.3d 194 (5th Cir. 2020). Plaintiffs' displeasure with the Governor's response does not give rise to a constitutional claim.

**2. Establishment Clause.**

Plaintiffs do not dispute that, in attempting to reduce the spread of COVID-19 and protect public health, the Challenged Proclamations had a secular purpose, nor do they argue that the Proclamations' "primary purpose" inhibited religion. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 294 (5th Cir. 2001). Instead, Plaintiffs argue that the Proclamations inhibited religion by "forcing people to stay away from church" and fostered an excessive entanglement with religion by "regulating how churches may meet." Rec. Doc. 121 at 18. The Challenged Proclamations did not "forc[e] people to stay away from church." Going to and from church was defined as an "essential activity," and the "primary purpose" of the gathering-size limitations—stopping the pandemic—did not inhibit religion. For the limited time those Proclamations were in effect, Spell could have held multiple, smaller in-person services; met with congregants individually; communicated by phone or email; livestreamed services; or posted services on the internet.

The Challenged Proclamations likewise did not foster an excessive entanglement with religion.[4] The Proclamations constitutionally regulated Spell's church just as the State ordinarily does through building, life-safety, and zoning laws. Nonetheless, the Proclamations treated churches the same as or better than other comparable activities. *See* Rec. Doc. 119-1 at 15-16.

**3. Freedom of Speech and Assembly; Equal Protection.**

Plaintiffs conflate their free-speech and free-assembly claims with one another and with their claims under the Religion Clauses in arguing that the Challenged Proclamations prevented Spell from speaking to his congregants at prayer services. *See* Rec. Doc. 121 at 18-20. Plaintiffs mistakenly premise their free-assembly claims on *Jacobson*, which held that state officials are entitled to "especially broad" latitude in making medical and scientific decisions in times of a pandemic, and, within those "broad limits," "they should not be subject to second-guessing by an 'unelected federal judiciary.'" *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613-14 (2020) ("*South Bay I*") (Roberts, C.J, concurring) (citations omitted). Thus "*Jacobson* instructs that *all* constitutional rights may be reasonably restricted to combat a public health emergency," such as COVID-19, including religious rights. *Abbott II*, 954 F.3d at 786. The Challenged Proclamations did not—"beyond all question"—constitute a "plain" and "palpable" invasion of Spell's rights. The orders neither imposed permanent limitations nor prevented Spell from assembling for prayer with smaller groups in person or larger groups outdoors or virtually.

Plaintiffs' free-speech claims are similarly unavailing. Plaintiffs complain that the Governor has characterized their alleged speech as "expressive conduct" but have alleged only

[4] The crowd-sizes limitations must be considered in the context of the early response to the pandemic. *See supra* at 4-5. While COVID-19 is in many respects unprecedented, it is not without comparison. Contrary to Plaintiffs' suggestion, *see* Rec. Doc. 121 at 18, New Orleans city leaders and public health officials closed churches in New Orleans in response to the Spanish Flu. *See, e.g.*, Drew Broach, *Spanish flu hit New Orleans hard, but there are lessons for today's coronavirus fight* (Mar. 13, 2020), https://www.nola.com/news/coronavirus/article_d430f5f8-657e-11ea-8e4a-8b5b4e421afe.html.

that his orders prevented them from speaking to one another while at church. Rec. Doc. 121 at 19. Plaintiffs have not identified any particular speech allegedly prohibited or prevented. Spell remained free to speak to his congregants, which he did.[5] *See* Rec. Doc. 119-1 at 23.

**D. The Governor Enjoys Sovereign Immunity From Plaintiffs' Injunction and State-Law Claims Under the Eleventh Amendment.**

Plaintiffs are altogether silent regarding the Governor's argument that the Eleventh Amendment bars their claims for injunctive relief because he is not responsible for enforcing the Challenged Proclamations. *See id.* at 24-25. Plaintiffs also appear to concede that the Eleventh Amendment bars all their state-law claims, except Count VIII.[6] Plaintiffs implore the Court only to "recognize the difference in the Amended Complaint between Counts V [sic] through VII, which ask this Court to enforce state law, and Count VIII, which this Court must examine to determine whether a violation of federal law has taken place." *Id.* at 21. Count VIII falls, however, within Plaintiffs' own list of "State Claims" in the Amended Complaint, is entitled "Louisiana Homeland Security and Emergency Assistance Disaster Act—Louisiana Statutory Law," and seeks relief pursuant to that act and other state law. Rec. Doc. 58 at 37-46.

Plaintiffs' argument again misunderstands *Jacobson* in suggesting that this Court must examine state law to determine whether their rights under federal law have been violated. *Jacobson* instructs courts to defer to state responses to public health emergencies. The Supreme Court did not hold that courts must look to state law to determine the scope of federal constitutional

[5] Plaintiffs address the alternative means of assembling and communicating that were available only in their equal-protection argument, but those alternatives have nothing to do with the Fourteenth Amendment. *See* Rec. Doc. 121 at 20. In addition, Plaintiffs reprise their complaints about the Black Lives Matter protests in connection with their free-speech and equal-protection claims. *See* Rec. Doc. 121 at 19-20. That argument does not establish a violation of those rights any more than it proves a violation of Plaintiffs' free-exercise rights.

[6] Plaintiffs have pleaded state-law claims against the Governor in the Second Spell Suit as well. Having removed that case, the Governor does not contend that the Eleventh Amendment bars those claims. The Governor has moved separately to dismiss the Second Spell Suit's state-law claims. *See* Rec. Doc. 13.

rights or standards. Thus, neither *Jacobson* nor Revised Statutes § 29:736(D) requires or even authorizes the Court to view their federal constitutional rights through the lens of state law.

Even if the Eleventh Amendment did not bar Plaintiffs' state-law claims, they should still be dismissed. Plaintiffs have not shown that the Challenged Proclamations violated their state—as opposed to federal—constitutional rights. *See* Rec. Doc. 119-1 at 24 n.8. Plaintiffs also misread § 29:736(D), which does not prohibit every encroachment on state constitutional rights during a public health crisis. *See id.* Accordingly, the Court should dismiss the state-law claims.

## III. CONCLUSION

The Governor respectfully requests that the Court grant the motion and dismiss Plaintiffs' Amended Complaint against him with prejudice.

Respectfully submitted,

JEFF LANDRY
Attorney General

By: /s/ James M. Garner

JAMES M. GARNER (# 19589), T.A.
DARNELL BLUDWORTH (# 18801)
JOSHUA S. FORCE (# 21975)
CHRISTOPHER T. CHOCHELES (# 26848)
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112-1033
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
Email: jgarner@shergarner.com
dlbudworth@shergarner.com
jforce@shergarner.com
cchocheles@shergarner.com
Special Assistant Attorneys General

JACK M. WEISS (# 13340)
*Lead Counsel*
Attorney at Law
5938 Laurel Street
New Orleans, LA 70115
Telephone/Facsimile: (504) 267-0637
Email: jack1656@gmail.com
Special Assistant Attorney General

MATTHEW F. BLOCK (# 25577)
Executive Counsel
Office of the Governor
Louisiana State Capitol
4th Floor
Baton Rouge, Louisiana 70804
Telephone: (225) 342-7015
Email: matthew.block@la.gov

Attorneys For Defendant
GOVERNOR JOHN BEL EDWARDS